**AMERICAN TITLE INSURANCE COMPANY OF MIAMI, FLORIDA, et al., Appellants,**

v.

**L. Tonnett BYRD et al., Appellees.**

No. 11166.

Court of Civil Appeals of Texas.

Austin.

March 11, 1964.

Rehearing Denied April 1, 1964.

James R. Sloan, L. Hamilton Lowe, Patrick W. Thompson, Austin, for appellants.

Kuykendall & Kuykendall, Austin, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment of the trial court without a jury for $16,245.00, growing out of a suit for damages for alleged fraud, occasioned by the issuance of a title policy commitment by the appellants, whereby the appellants, defendants below, represented that they would issue a title policy upon a tract of land in Hays County, Texas.

Appellees sought to recover damages as provided under the terms of Article 4004, Vernon's Ann.Civ.St.

In the trial of the case testimony developed that ½ of the minerals in, on and under 541.5 acres out of the 601.1 acres tract mentioned in the "Owner's Title Policy Commitment" issued by appellants, had been severed from the surface estate and held by third parties. The "Owner's Title Policy Commitment" did not refer to or except such severed minerals.

The appeal is founded on seven points assigned as error by the trial court in rendering judgment because the evidence established that as a matter of law the plaintiffs did not rely upon any false representations of the defendants in purchasing the land; that the overwhelming preponderance of the evidence is contrary to the finding of the trial court; that there is no evidence of any false representations made by the defendants; that the finding of the trial court that the defendants made false representations of material facts to plaintiffs is contrary to the overwhelming preponderance of the evidence; that there is no evidence of damage suffered by plaintiffs as a result of reliance on any false representations of defendants; that the measure of damages applied by the court is not the proper measure of defendants' liability, if any, and finally the court erred in rendering judgment for damages as to the one half interest conveyed to Day, he having sold his interest and having testified that he did not suffer any damages.

Plaintiffs, appellees herein, made an escrow agreement with Matz & Acton Agency for the purchase of the Bob Garrison Ranch consisting of approximately 601 acres, for a stipulated price, to be conveyed by General Warranty Deed, and made an escrow deposit of $2,000.00 on January 25, 1962. The escrow agreement provided that the purchasers were to be furnished an owner's title policy at the expense of the seller.

On February 1, 1962, the American Title and Insurance Company, appellant, gave L. Tonnett Byrd and W. M. Day its preliminary report and Owner's Title Policy Commitment on the title to 601.1 acres of land out of the Enoch Moore and several other adjacent surveys, and being the same land conveyed by Ira A. Combs and wife to Robert D. Garrison, Jr. and wife, by deed dated November 15th, 1960 and recorded in Volume 184, Pages 256–9 of the Deed Records of Hays County, Texas.

The commitment recited that "We have approved the title to said Real Estate which is vested in Robert D. Garrison and wife, Mary Burton Garrison, for the issuance of

said Owner's Title Policy, subject to the following matters hereinafter set forth:" there are set out 10 items to which the commitment was subject to, such as taxes, defects that might arise subsequent to January 31st, 1962, restrictive covenants, area and boundary lines, rights of parties in possession, payment of claims for labor and materials, release of certain indebtedness set out, and tax information. No exception was made as concerned mineral interests held by third parties.

On January 26th, 1962, a General Warranty Deed was executed by Robert D. Garrison, Jr. and Mary Burton Garrison, for a recited consideration conveying 601.1 acres of land out of the Enoch Moore and several other adjacent surveys to William Mark Day and L. Tonnett Byrd, with the same descriptive recitations as set out in the Title Policy Commitment. This deed was filed for record on the 1st day of February 1962, and thereafter recorded.

On the 2nd day of February 1962, appellant issued its Owner's Policy reciting that "For Value Received DOES HEREBY GUARANTEE To WILLIAM MARK DAY and L. TONNETT BYRD herein styled assured, their heirs, executors and administrators, that they have good and indefeasible title to the following real property:

Being 601.1 acres of land out of the Enoch Moore * * *"

This policy contains the following items to which it is recited to be subject to:

"*  *  *

"6. An undivided 1/8th mineral interest held by Monarch Oil & Royalty Corporation by virtue of mineral deed from L. W. Stieren, dated March 8, 1930, recorded in Vol. 100, Pages 205–206 of the Hays County Deed Records.

"7. An undivided 3/16 mineral interest held by L. W. Stieren and an undivided 3/16th mineral interest held by E. J. Koenig, by virtue of that certain mineral partition deed, dated October 22, 1931, recorded in Vol. 100, Pages 431–434, of the Hays County Deed Records."

██ We believe that the appellees had the legal right to and that the trial court was justified in finding that appellees did rely upon the representations contained in "Owner's Title Policy Commitment" issued to them by appellants, and such is supported by a preponderance of the testimony adduced on the trial.

██ The trial court found that the failure of appellants to show in the "Owner's Title Policy Commitment" that one half of the minerals in, on and under the 541.5 acres had been severed and belonged to third parties was a false representation by the appellants to appellees of a past and existing material fact, and such is supported by the preponderance of the evidence and further that such constituted a false representation of a past and existing material fact within the meaning of Article 4004, V.A.C.S., and the measure of damages reflected by the judgment is in accordance with the measure of damages provided in the Article under which plaintiff sought to recover and under which they did recover damages.

The deed to plaintiffs was dated January 26, 1962, and signed and acknowledged by Mrs. Garrison on the same date, and was signed and acknowledged by Mr. Garrison on January 30, 1962, and purported to convey "all that * * * being 601.1 acres, * * *" and did not except from the conveyance the outstanding 1/2 of the minerals.

The deed was in the office of Mr. Coleman Gay, an attorney for the Garrisons. Plaintiffs went to Mr. Gay's office on January 26, 1962 but were not furnished a Title Policy Commitment.

On February 5, 1962, Day and Byrd went to Mr. Gay's office at which time they were furnished an "Owner's Title Policy Commitment" which was approved and accepted as was the deed and they took possession of the land.

The "Owner's Title Policy" which excepted one half of the minerals from the policy coverage was not delivered to appellees until March 9, 1962.

Appellee Byrd testified that they did not accept the deed until February 6, 1962 at which time the "Owner's Title Policy Commitment" was delivered and approved by appellees.

The real estate agent testified that he was told by the purchasers that the deal could not be closed until a Title Policy Commitment had been furnished.

Mr. Day testified that had he known that half of the minerals had been previously conveyed to third parties out of substantially all of the 601 acre tract he would not have gone ahead with the deal, because he believed that the fact that only about half of the minerals passed with conveyance would have a detrimental effect on a resale of the property particularly in small tracts and would be an interference with the total ownership of its fee title and would constitute the third party mineral owners as co-tenants, and they would have the right, without consent of the other co-tenants to prospect for, produce and sell minerals from the common property.

The commitment was a contract and the blank spaces were filled in by the company and if there is any ambiguity it will be strictly construed against the one who drafted it.

The rule is stated in 13 Tex.Jur.2d page 285, Sec. 121, and in the cases cited.

Appellants contend that the land conveyed was subject to the outstanding mineral interest, because the deed to Combs, a former owner, and the deed to the Garrison's excepted from the conveyance the outstanding ½ of the minerals and that even though the commitment refers to 601.1 acres of land it did not cover the severed minerals.

If this contention could be upheld the "Title Policy Commitment" would be of no value and the responsibility would be on the purchaser to examine the records to determine what property his grantor owns and we do not believe that such contention is valid.

In Moore v. Bleakley, Tex.Com.App., 215 S.W. 957, 958, this Court stated:

"[T]he person committing the fraud cannot defeat a claim for damages based thereon by a plea that the party defrauded might have discovered the truth by the exercise of proper care."

25 Tex.Jur.2d, page 665, Sec. 35.

The duty and liability of an abstractor who omits an instrument affecting the title to the land covered by the abstract from such abstract is discussed and determined in Chicago, Rock Island & Gulf Ry. Co. v. Duncan, Tex.Civ.App., 273 S.W. 908, error refused, in which case the court held:

"Therefore it was the concealment, through said false abstract and certificate, of the fact that appellant's grantor did not have, and therefore could not convey to appellant, a good and sufficient legal title to the property, that induced appellant to buy, * * * that prevented appellant from discovering such facts before it purchased the property * * *."

Guaranty Abstract Co. v. Denman, Tex.Civ. App., 209 S.W.2d 213, no writ history.

Under Art. 9.01, V.A.T.S. the appellants were authorized to issue,

" * * * commitments for title insurance specifying the requirements for title insurance and the defects in title necessary to be cured or corrected; "

The commitment was issued and certain defects or exceptions are set out, but no mention is made of the outstanding mineral interest and it is not excepted.

The commitment reads in part as follows:

"When the title to said property becomes vested in the purchaser * * * free and clear * * * of all the de-

fects, liens and incumbrances hereinabove set out, * * * we commit ourselves to issue to you an Owner's Title Insurance Policy * * *"

When the title policy was issued it contained an exception to the effect that the policy did not cover the outstanding mineral interest.

■ At the time the commitment was issued the appellants were charged with knowledge of the contents of the deed to Combs and from Combs to the Garrisons. The commitment shows where the deeds were recorded.

The failure of appellants to disclose the material fact as to the minerals outstanding constituted a false representation.

Blanton v. Sherman Compress Co., Tex. Civ.App., 256 S.W.2d 884, no writ history; Chandler v. Butler, Tex.Civ.App., 284 S.W. 2d 388, no writ history.

The two cases cited are plea of privilege cases but correctly state the law as concerns fraud and false representations.

We believe that this suit was filed, tried and judgment rendered as provided for under Article 4004, V.A.C.S. This Article reads as follows:

"Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations or promises or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered. Acts 1919, p. 77."

As previously stated herein this was a transaction in real estate, and the failure of appellants to disclose that one half of the minerals were outstanding was a false representation of an existing material fact, and appellees relied upon the provisions of the commitment and would not have purchased the land had they known that one half of the minerals were outstanding.

The measure of damages as set out in the statute was applied by the court and the amount was fixed by the testimony of three witnesses, each of whom testified that the difference in value ranged from $40.00 to $25.00 per acre.

The court found the difference in value was $30.00 per acre as to the 541.5 acre tract from which one half of the minerals had been severed.

A witness called by appellants testified that with one half of the minerals outstanding the market value would be reduced five to ten per cent.

Appellants have not challenged the sufficiency of the testimony supporting the $30.-

00 difference in value between the land with all minerals in place and with one half of the minerals outstanding.

We do not believe the trial court was in error in applying the statutory measure of damages. Schonrock v. Taylor, supra. Sibley v. Southland Life Ins. Company, Tex., 36 S.W.2d 145, Tex.Com.App. opinion adopted.

The judgment of the trial court is affirmed.